RECEIVED
in Clerk's Office
JUL 12 2022
U.S. District Court
Middle District of TN

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
MIDDLE DIVISION

LESLIE JONES
    Plaintiff

V.    No.: 01-22 0024

CENTURION, ET AL.,
    Defendants.

## COMPLAINT

COMES NOW, the Plaintiff, and respectfully submits a complaint in this cause against the Defendants listed below. This complaint is filed under 42 U.S.C § 1983; 42 U.S.C. § 12132; U.S. Const. Amend. VIII and XIV based upon the following issues:

### Grievance Administrative Remedies

The Plaintiff has exhausted his administrative remedies in this case. After the Plaintiff has exhausted his grievance remedies concerning these issues, the grievance Sgt. has repeatedly noted, after dismissing his grievances as moot that: "A diagnosis by medical professionals and medical co-pay is inappropriate" for grievance, and "Classification matters/institutional placement are inappropriate Grievance procedure". (Quoting TDOC Policy #501.01 VI. (H)(8) and TDOC Policy #501.01 VI. (H)(3)) Therefore, the Plaintiff grievances concerning these issues they have all been rejected as moot, and they will be rejected because they are "non-grieveable" matters under TDOC Policy. (Id)

## Previous Lawsuits

The Plaintiff has not filed any previous lawsuits. This is his first lawsuit he has ever filed and it is an urgent matter affecting his medical conditions. Due to the nature of this lawsuit and the fact that the passage of time elongates the torture of increased medical pains from the lack of a medical transfer, the Plaintiff requests for this Court to promptly handle this matter as law and justice both require.

## Parties To Proceeding

Plaintiff

Leslie Jones #333051

TCIX

1499 R.W. Moore Memorial Highway

Only, Tennessee 37140


Defendants

Centurion[1]

Dr. Mark Fowler

Dr. Tucker

Kevin Rea

A/W Cotham

Jason Clendenion

Todd Staples

TCIX

1499 R.W. Moore Memorial Highway

Only, Tennessee 37140

---

[1] The Medical Company hired by the Tennessee Department of Corrections who Dr. Fowler, Tucker and Rea work for.

## HISTORY OF THE CASE

The Plaintiff previously had surgery and has been diagnosed by a medical doctor with a condition called Neuropathy. Neuropathy is: "A disorder that causes a functional disturbance of a peripheral nerve, brought about by any cause." (Magill's Medical Guide Vol. II Pg. 1602[2]) On March 3rd 2021, the Plaintiff had a medical appointment with Dr. Tucker at Turner Center Industrial Complex [TCIX]. (Ex. 1 TWO WAY MESSAGE 3/15/22, Responded by: Kevin M. Rea, Health Service Administrator for TCIX on 3/21/22)[3] During that conversation, Dr. Tucker told the Plaintiff: "Your medical condition worsens when you walk up and down steps and hills." (Ex. 2, Affidavit of Plaintiff) The Plaintiff requested for Dr. Tucker to sign a transfer order to be transferred to D-Berry "Special Needs", a medical facility in Nashville Tennessee that is on flat land, unlike TCIX which is replete with steep hills and voluminous steps that cannot be avoided to travel around the complex for medical, recreational, and clothing needs. (Ibid) Dr. Tucker told the Plaintiff that he would sign a transfer Order to Special Needs, and recommended that the Plaintiff receive meals in his cell to minimize the need for him to walk up and down the stairs and hills which increases the pain Plaintiff experiences by Neuropathy. (Ibid)

On 8/6/21, the Plaintiff submitted a TWO WAY MESSAGE request to Assistant Warden of Treatment, Mr. Cotham requesting that he inquire into a medical Order written by Dr. Tucker providing: "No steps or hills" indicating that the Plaintiff be eligible for "special reclassification". Mr. Cotham responded providing "I sent a request to classification but it could take time." (Ex. 3, TWO WAY

---

[2] It should be noted that peripheral nerves are "those nerves found outside the rain and spinal cord, function to carry information between the central nervous system and the other portions of the body." (Ibid Magill's Medical Guide Vol. II at Pg. 1602) "Neuropathy is a general term used to describe a decrease in the function of peripheral nerves which may be caused by many factors. The first signs of a neuropathy are usually a tingling, prickling, or burning sensation in some part of the body. This is followed by a sensory loss; the inability to perceive touch, heat, cold, or pressure; and a weakness in the muscles in the area affected. This weakness may eventually lead to a loss of muscle termed muscular atrophy. Neuropathies may affect sensory neurons, motor neurons, or both and can occur in both spinal and cranial nerves." (Id Magill's Medical Guide Vol. II. at Pg. 1604) (Defining Neuropathy)

[3] This response from Defendant Rea indicates: 'I went back and reviewed your record where you seen Dr. Tucker on March 3rd, 2021. The notes do indicate that you requested a transfer but there was no order from the doctor to transfer you. I do answer inmate requests.")

MESSAGE to Asst. Warden Cotham dated 8/16/21) On Feb. 19th, 2022, the Plaintiff had another medical visit with Doctor Tucker wherein he requested another institutional transfer. Dr. Tucker informed the Plaintiff that "I have submitted a medical transfer order. It is now up to Warden Clendenion for recommendation to have you transferred to Special Needs." (Ex. 2, Affidavit of Plaintiff) On 3/29/22, the Plaintiff submitted an additional TWO WAY MESSAGE request to Asst. Warden Cotham asking: "Is there some reason why I can't be transferred to special needs per doctor's orders as of March 3rd, of last year?" Mr. Cotham responded, "I believe you need to talk with a doctor again. Let them access your situation and make recommendation." (Ex. 4, TWO WAY MESSAGE 3/6/22, Responded 3/29/22)[4]

Previous Issues[5]

On 12/29/19, the Plaintiff went to pick up his medication from the medical department at TCIX his legs went numb and he fell to the ground. The Plaintiff laid on his back for about 20 minutes after he lost feeling in his back. There was no officer in sight for at least 20 minutes. On 1/13/20, the Plaintiff fell before Michael Clickner, an officer who refused a call an emergency medical code after he told Mr. Clickner about his medical condition of Neuropathy. The Plaintiff laid on the ground and was not aided by the staff until after inmates yelled for help after witnessing him lying on the ground for a short period of time. Since this point in time, the Plaintiff has felt that his life was in danger because his medical condition has been neglected by Defendants Clendenion, Cotham, Tucker, Fowler and Rea. (See Ex. 2, Affidavit of Plaintiff)

Housing Difficulties

---

[4] This response gives indication that Dr. Tucker did not send a copy of the medical transfer order to Warden Clendenion or place on in Plaintiff's medical file as promised. However, Dr. Tucker has promised to sign a medical transfer order which transfers the responsibility for transferring Plaintiff to Special Needs to the Warden Clendenion, Assistant Warden Cotham and Classification Coordinator Todd Staples.
[5] It should be noted that these issues are not being raised within the statement of claim, but are mentioned as history and providing circumstantial evidence

The Plaintiff was housed in Unit 1, on the top of a gigantic steep manmade hill and steep stairs at TCIX in order to obtain medication, changes of clothing and fulfill his recreational needs. (Ex. 2 Affidavit of Plaintiff) On 2/11/21, the Plaintiff was moved to Unit 4, and placed on protective custody in response to a verbal altercation he had with officers and Warden Clendenion at TCIX. (Ibid)[6] In Nov. of 2021, the Plaintiff was moved back to Unit 1 at the top of the steep gigantic manmade hill. The Plaintiff has had to walk up and down the gigantic manmade hill with very steep stairs.

---

[6] Unit 4 is at the bottom of the TCIX complex. It is located down two long flights of stairs, or alternatively a very curvy steep slope. There are 128 steep stairs from Units 3 and 4 to get to the medical department of the TCIX complex.

## Statement of Claim

The Plaintiff asserts that the Defendants Centurion, Dr. Mark Fowler, Kevin Rea, Jason Clendenion, Cotham and Todd Staples have all violated his Eighth Amendment rights to be free from cruel and unusual punishment, and his Fourteenth Amendment Equal Protection rights to the U.S. Constitution and 42 U.S.C. § 12132 (the Americans With Disabilities Act):

1.) The Plaintiff has been diagnosed with neuropathy, a severe nerve condition that causes him to experience rigorously irritating pain through his body. In March of 2021, Dr. Tucker told the Plaintiff in a medical visit: "Your medical condition worsens when you walk up and down steps and hills." In that visit, the Plaintiff had requested to be moved to a prison that has flat land instead of a prison that has a lot of hills and stairs, like Turner Center Industrial Complex [TCIX]. Dr. Tucker informed the Plaintiff that he placed a medical order inside of his medical file.

2.) On Feb. 19th, 2022, the Plaintiff had another medical visit with Doctor Tucker wherein he requested another institutional transfer. Dr. Tucker informed the Plaintiff that "I have submitted a medical transfer order. It is now up to Warden Clendenion for recommendation to have you transferred to Special Needs." (Ex. 2, Affidavit of Plaintiff) The Plaintiff submitted a two-way message request to Warden Clendenion requesting to be transferred to another facility, namely Special Needs due to Neuropathy worsening with the steps and hills of TCIX. Warden Clendenion responded saying, "I received your two-way requesting to be transferred to another facility due to medical issues. Admission to SPND is nothing that I have any control of. It is strictly the decision of the doctor's supervising your care. I would suggest you meet with your physician to discuss your treatment and needs in relation to your condition." (Ex. 5, Memo From Jason Clendenion 3/8/22) Defendant Clendenion's failure to transfer Plaintiff to Special Needs has caused the Plaintiff's neuropathy to worsen. The Plaintiff continues to experience pain every

time he has to walk up and down hills and stairs to access medical, recreational, and clothing needs of TCIX.

3.) On 8/6/21, the Plaintiff submitted a TWO WAY MESSAGE request to Assistant Warden of Treatment, Mr. Cotham requesting that he inquire into a medical Order written by Dr. Tucker providing: "No steps or hills" indicating that the Plaintiff be eligible for "special reclassification". Mr. Cotham responded providing "I sent a request to classification but it could take time." (Ex. 3, TWO WAY MESSAGE to Asst. Warden Cotham dated 8/16/21) On 3/29/22, the Plaintiff submitted an additional TWO WAY MESSAGE request to Asst. Warden Cotham asking: "Is there some reason why I can't be transferred to special needs per doctor's orders as of March 3rd, of last year?" Mr. Cotham responded, "I believe you need to talk with a doctor again. Let them access your situation and make recommendation." (Ex. 4, TWO WAY MESSAGE 3/6/22, Responded 3/29/22) Defendant Cotham's failure to transfer the Plaintiff to Special Needs has caused the Plaintiff's neuropathy to worsen and cause more severe pain with the passage of time. The Plaintiff continues to experience pain every time he walks up and down hills and stairs to access medical, recreational, and clothing needs of TCIX.

4.) Dr. Fowler's and Dr. Tucker's[7] failure to sign a medical transfer order for Plaintiff to be transferred to Special Needs has cause Plaintiff to suffer ongoing medical pain from day to day being housed at TCIX having to walk up and down stairs and hills to get his medication, clothing, recreation and religious needs since March of 2021 until the present day.

---

[7] The Plaintiff would note that Dr. Tucker did verbally tell him that he filed a medical transfer order in his medical file and it was up to the Warden and Security to make sure he was reclassified to Special Needs. However, Defendant Rea has told the Plaintiff that Dr. Tucker noted in his medical file that he requested for a medical transfer, but did not actually write a medical transfer order for him to be transferred to Special Needs.

5.) In July, August, September, October, November, and December of 2021, January, February, March, April and May of 2022, the Plaintiff has been forced to walk up and down stairs to the building of Unit 3 and Unit 1, up several steep hills to get to the medical department of the prison to pick up his monthly medication. The Plaintiff experienced severe pain in his lower back that extends to his feet, which makes his right bottom foot feel like a lifeless pad and numbs the feeling inside of his right foot, which causes his feet to go numb. The Plaintiff's right leg feels heavy and often drags from the nerve damage. His left leg feels loose and he often looses control of it, which causes it to move on its own which can result in him falling to the ground unexpectedly. The Plaintiff also experiences ongoing pains in his neck which causes his fingertips to go numb, and results in him dropping things that he may be holding due to his medical condition of Neuropathy.

6.) In September and October of 2021, the Plaintiff's feet developed severe numbness causing him to fall to the ground while walking up and down the steep hills and stairs of TCIX. The Sergeants on the yard picked him up from off of the ground because his feet went numb as he tried to walk to go and get medication.

7.) On 3/3/22, the Plaintiff had to walk to the INTAKE Department at TCIX to pick up his clothes because Defendant Clendenion has not allowed for any inmates to help another inmate carry clothes that may have a medical condition. The Plaintiff had to walk down about 15 stairs to get from Unit 1 to the road that leads to a steep hill, which leads to the INTAKE Department. The Plaintiff walked about 200 steps before he went down the big hill. When he began to walk down the steep hill, his back pain instantly began to increase which caused his feet to go numb. After reaching the bottom of the steep hill, the Plaintiff had to make a sharp right turn which leads to a flight of about 25 more stairs that leads to another road to get to the INTAKE Department of TCIX. The Plaintiff walked down the second flight of stairs. Then, his severe back pain and feet

numbness instantaneously increased. Once the Plaintiff made it down the huge flight of concrete stairs to the road that leads to the INTAKE Department, he had to walk another 600 steps to get to the 5 or 6 stairs that leads to the INTAKE Department. Once he got to the INTAKE Department, the Plaintiff walked up more stairs to get to the INTAKE Department, got the clothes and had to walk back down a flight of stairs, take another 600 steps back to return to the flight of 25 stairs that leads to the steep hill, which leads to the road back to the 15 stairs that leads back to Unit 1 where he is housed. The Plaintiff experienced pain the entire way back to Unit 1. After the 3/3/22 incident, the Plaintiff was unable to walk to the medical department at TCIX to get his medication because the pain from Neuropathy was so detrimental that he was bedridden for a week. (Ex. 2 Affidavit)

8.) The Plaintiff's history of requesting for institutional transfer to D-Berry Special Needs Facility is extensive, to say the least.[8] On July 25th, 2021, the Plaintiff has personally requested for Defendant Clendenion to transfer him to Special Needs because his medical condition worsens by remaining at TCIX where he is forced to travel up hills and stairs. Defendant Clendenion contacted Defendant Rea, confirmed the urgency of his medical condition, but refused to submit Plaintiff's name to the classification coordinator Todd Staples or contact Brandon Maloney with TDOC in Nashville for an emergency transfer to Special Needs. Defendant Clendenion has both verbally and in writing, placed the blame of the Plaintiff not being medically transferred to Special Needs on Defendant Rea, Tucker and Fowler. However, Defendants Rea, Tucker and Fowler all place the blame on Defendants Clendenion, Cotham and Defendant Staples. Nevertheless, the Plaintiff's serious medical condition continues to worsen due to him not being transferred to Special Needs. The Plaintiff has personally spoken to Defendants Clendenion and Cotham in November of 2021 about the issues he was having walking up and down hills and

---

[8] Plaintiff is submitting this evidence as corroborative evidence to corroborate the substance of the complaint. For each and every Defendant in this case has had numerous requests from the Plaintiff for institutional transfer to D-Berry Special Needs since 2020.

stairs that worsens his medical pains from neuropathy. The awareness of Plaintiff's medical condition worsening by keeping him housed at TCIX demonstrates Defendants Clendenion, Cotham and Staples intentional and deliberate reluctance to transfer the Plaintiff to Special Needs, which has caused Plaintiff's medical condition to worsen and increases his daily pains tremendously from day to day since July 25th, 2021 to the present time.

9.) In April of 2022, Kevin Rea informed the Plaintiff that TCIX did not have a doctor anymore because Dr. Tucker does not work for TCIX anymore. However, Kevin Rea promised the Plaintiff in April of 2022 that a new medical doctor would be hired in May of 2022 and that doctor will sign a medical transfer order for the Plaintiff to be transferred to Special Needs Prison. However, in May of 2022, no new medical doctor was hired, and the Plaintiff had another doctor's visit with Dr. Fowler on 6/3/22 who previously ignored the Plaintiff in a medical visit after the Plaintiff explained his medical condition with the opinion of Dr. Tucker that the Plaintiff's neuropathy is instigated with hills and stairs, and the need to have a medical transfer order signed to have the Plaintiff transferred to Special Needs, a flat prison with the appropriate medical staffing. On 6/3/22 during the doctor's visit the Plaintiff had with Dr. Fowler ignored the Plaintiff (again) dropping his head down the entire time the Plaintiff was speaking to him. After the Plaintiff finished speaking to Dr. Fowler about how the hills and stairs at TCIX instigate his neuropathy pains, and the need for a medical transfer order to Special Needs, a prison with flat land and appropriate medical staffing, Dr. Fowler said, "I don't know anything about that and I can't help you with anything." (Ex. 2, Affidavit of Plaintiff) After the Plaintiff requested for Dr. Fowler to transfer him on both medical visits, Dr. Fowler said, "I can't help you with that. I can't sign a medical transfer order to help you any." (Id) The Plaintiff remains at TCIX where his nerve pains are instigated daily due to the deliberate indifference of the Defendant Dr. Fowler concerning his serious medical needs.

10.) On June 3rd, 2022, the Plaintiff visited Dr. Fowler again explaining his medical condition and need to be transferred to Special Needs. During that medical visit, Dr. Fowler had his head hanging down the entire time while the Plaintiff was explaining his situation (ignoring him). The Plaintiff requested for Dr. Fowler to sign a medical transfer order for him and Dr. Fowler and said, , "I don't know anything about that and I can't help you with anything." The Plaintiff noticed that Dr. Fowler never looked into his medical file to verify his contentions about his medical problems of neuropathy.

11.) The Defendants Centurion, Rea [Health Care Administrator), Clendenion and Cotham have violated the Plaintiff's rights under the American With Disabilities Act, the Eighth and Fourteenth Amendments to the U.S. Const. by:

    a.) Deliberately refusing their Medical responsibilities of hiring a permanent medical doctor for TCIX who will re-evaluate the Plaintiff, and issue a medical transfer order for him to be transferred to Special Needs so he can be housed on flat land and get recreation to help him to better live with his medical condition of Neuropathy without instigating the nerve pains from walking up steep hills and stairs.

    b.) The deliberate refusal of those defendants to hire a permanent medical doctor subsequently causes the Plaintiff to remain housed at TCIX that has steep hills and stairs, which deprives him of his rights to recreation, medical and religious services without experiencing severe nerve pains from walking up and down those steep hills and stairs at TCIX.

    c.) Housing the Plaintiff at TCIX deprives the Plaintiff of access to recreation and religious services as similarly situated inmates in the TDOC who have access to those faculties without experiencing severe medical pains due to them walking up and down steep hills and stairs. In order for the Plaintiff to be able to go to the recreation yard, or gym or

failure of the Defendants to transfer the Plaintiff to Special Needs "…creates a substantial risk of serious harm" (Id at 899) violating Plaintiff's Eighth Amendment rights and rights under the American With Disabilities' Act. Id ("When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity…the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition.") In such cases, the Plaintiff "need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Id at 900 ("Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame.") In Blackmore, the Plaintiff "suffered for two days". (Ibid) In this case, the Plaintiff has suffered for a year, and continues to suffer while this case is pending. (Id; D.E. 1 Compl. Statement of Claim) (Emphasis)

Mirroring Blackmore

In Blackmore, the Plaintiff "was suffering from appendicitis" and the 6th Circuit held that "it is sufficient that the officers' delay in treatment o f an obvious medical emergency posed a substantial risk of serious harm to Blackmore by subjecting him to unnecessary infliction of pain." (Blackmore, 390 F. 3d at 899) Similar to the case of Blackmore, the Plaintiff in this case is suffering from neuropathy from living at TCIX, a prison replete with steep stairs and hills which worsens the Plaintiff's nerve damage caused by his medical condition of neuropathy. (Ex. 2 Affidavit of Plaintiff at ¶ 1-3) Therefore, the medical treatment the Plaintiff needs is not only placed upon the Defendant Doctors issuing a medical transfer order, but also upon the Defendant Warden Clendenion, Assistant Warden of Treatment Cotham and Defendant Staples, the Classification Coordinator of TCIX because they have the duty and responsibility to assure the Plaintiff is properly cared for and transferred to a prison with flat land, namely Special Needs. (Id; D.E. 1 Compl. Statement of Claim) As the 6th Circuit concluded in Blackmore, the

Plaintiff "presents sufficient evidence from which a jury can infer that his obvious need for medical care was 'sufficiently serious' and that the officers had a 'sufficiently culpable state of mind.'" Blackmore, 390 F. 3d at 900

WHEREFORE, THE PREMISES IS CONSIDERED, the Plaintiff requests for this court to require the U.S. Marshall's Service to serve a copy of the complaint and summons to each of the abovenamed Defendants in this case.

Respectfully Submitted,

*Leslie Jones*

Plaintiff/Pro Se

Leslie Jones # 333051

TCIX

1499 R.W. Moore Memorial Highway

Only, Tennessee 37140

Certificate of Service

I, Leslie Jones, certify that a copy of the foregoing has been mailed to the U.S. District Court Clerk on this ~~19th~~ 29TH day of June 2022.

LESLIE JONES #333051
T.C.T.X 2-B-218
799 R.W. Moore Mem. Hwy.
ONLY, TN. 37140



RECEIVED
in Clerk's Office
JUL 12 2022
U.S. District Court
Middle District of TN

U.S. DISTRICT COURT CLERK
801 BROADWAY, Room # 800
U.S. COURT HOUSE
NASHVILLE, TN. 37203