IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| LESLIE JONES, #333051, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 1:22-cv-00024 ) ) JUDGE CAMPBELL |
| CENTURION, *et al.*, | ) MAGISTRATE JUDGE ) NEWBERN |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Plaintiff Leslie Jones, an inmate of the Turney Center Industrial Complex (TCIX) in Only, Tennessee, filed this pro se, in forma pauperis action against Centurion, Dr. Mark Fowler, Dr. f/n/u Tucker, Kevin Rea, "A/W Cotham", Jason Clendenion, Todd Staples, and the TCIX, alleging violations of Plaintiff's civil and constitutional rights under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131(1). (Doc. No. 1). Plaintiff also filed a Memorandum of Law (Doc. No. 2) and a Memorandum of Evidence (Doc. No. 3) in support of his complaint.

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I. PLRA SCREENING STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and

1

summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III. FACTS ALLEGED IN THE COMPLAINT

The complaint alleges that Plaintiff suffers from neuropathy, a condition that worsens when he walks up and down stairs, steps, and hills. Plaintiff is housed at the TCIX, a facility "which is replete with steep hills and voluminous steps that cannot be avoid[ed] [when] travel[ing]

2

around the complex for medical, recreational, and clothing needs." (Doc. No. 1 at 4). In February 2011, Plaintiff was housed in Unit 4, which "is at the bottom of the TCIX complex. It is located down two long flights of stairs, or alternatively a very curvy steep slope. There are 128 steep stairs from Units 3 and 4 to get to the medical department." (*Id*. at 6). Since November 2021, Plaintiff has been housed in Unit 1, which is "on the top of a gigantic steep manmade hill and steep stairs." (*Id*. at 6).

On December 29, 2019, Plaintiff attempted to retrieve his medication from the medical department at TCIX when "his legs went numb and he fell to the ground." (*Id*. at 5). No officer came to assist Plaintiff for at least twenty minutes. On January 13, 2020, Plaintiff fell again and no TCIX staff member assisted Plaintiff until other inmates yelled for help.

During a medical appointment with Plaintiff's prison physician on March 3, 2021, Plaintiff asked Dr. Tucker to sign a transfer order so that Plaintiff could be transferred to the DeBerry Special Needs Facility "that is on flat land." (*Id*. at 4). Dr. Tucker told Plaintiff that he would sign the order and recommended that Plaintiff receive meals in his cell to minimize his walking up and down stairs and hills. Health Care Administrator Mr. Rea stated that, after he reviewed Plaintiff's record, he can confirm that Plaintiff "requested a transfer but there was no order from the doctor to transfer [Plaintiff]." (*Id*. at 4 n.3).

On August 6, 2021, Plaintiff contacted the Assistant Warden of Treatment, Mr. Cotham, requesting that he inquire into Dr. Tucker's medical order. Mr. Cotham responded that he "sent a request to classification but it could take time." (*Id*.)

In September and October of 2021, while walking up and down the steep hills and stairs of TCIX to get his medication, Plaintiff's feet became numb, causing Plaintiff to fall. "The

3

Sergeants on staff" picked Plaintiff up off the ground. (*Id*. at 9). Warden Clendenion, Mr. Staples, and Mr. Cotham witnessed Plaintiff's fall. (Doc. No. 2 at 6).

On February 19, 2022, during his appointment with Dr. Rucker, Plaintiff again requested a transfer order. Dr. Tucker stated that he had submitted the medical transfer order and the ultimate decision whether to transfer Plaintiff rested with the Warden. (Doc. No. 1 at 5).

On March 8, 2022, Warden Clendenion told Plaintiff that he "received [Plaintiff's] two-way requesting to be transferred to another facility due to medical issues. Admission to SPNC is nothing that I have any control of. It is strictly the decision of the doctor's [sic] supervising your care. I would suggest you meet with your physician to discuss your treatment and needs in relation to your condition." (*Id*. at 7). Plaintiff alleges that TCIX Classification Coordinator Mr. Staples also "responded to Plaintiff's verbal and written requests to be transferred" and failed to take action. (Doc. No. 2 at 6).

On March 3, 2022, after Plaintiff walked to the intake department to pick up his clothes, Plaintiff experienced severe pain and numbness "so detrimental that he was bedridden for a week" and unable to walk to the medical department to obtain his medication. (Doc. No. 1 at 10). Warden Clendenion does not permit inmates to help other inmates carry clothes. The complaint describes Plaintiff's walk to and from the intake department as follows:

> The Plaintiff had to walk down about 15 stairs to get from Unit 1 to the road that leads to a steep hill, which leads to the INTAKE Department. The Plaintiff walked about 200 steps before he went down the big hill. When he began to walk down the steep hill, the Plaintiff had to make a sharp right turn which leads to a flight of about 25 more stairs that leads to another road to get to the INTAKE Department of TCIX. The Plaintiff walked down the second flight of stairs. Then, his severe back pain and feet numbness instantaneously increased. Once the Plaintiff made it down the huge flight of concrete stairs to the road that leads to the INTAKE Department, he had to walk another 600 steps to get to the 5 or 6 stairs that leads to the INTAKE Department. Once he got the INTAKE Department, the Plaintiff walked up more stairs . . ., got the clothes and had to walk back down a flight of stairs, take another

4

600 steps back to return to the flight of 25 stairs that leads to the steep hill, which leads to the road back to the 15 stairs that leads back to Unit 1 where he is housed.

(*Id*. at 9-10).

On March 29, 2022, Plaintiff asked Assistant Warden Cotham if there was "some reason why [Plaintiff] can't be transferred to special needs per doctor's orders as of March 3rd, of last year?" (*Id*. at 5). Mr. Cotham told Plaintiff that he needed to speak to his doctor again. Then in April of 2022, Mr. Rea informed Plaintiff that Dr. Tucker no longer worked at TCIX and Plaintiff would receive a new doctor in May of 2022. However, in May of 2022, no new doctor had been hired.

On June 3, 2022, Plaintiff had an appointment with Dr. Fowler who "ignored" Plaintiff by "dropping his head down the entire time the Plaintiff was speaking to him." (*Id*. at 11). Plaintiff explained his need for a transfer to another facility. Dr. Fowler told Plaintiff: "I don't know anything about that and I can't help you with anything." (*Id*.) Plaintiff saw Dr. Fowler another unspecified date, and Dr. Fowler repeated the same behavior and statement.

Plaintiff remains at TCIX "where his nerve pains are instigated daily due to the deliberate indifference" of Defendants. (*Id*.)

As relief, Plaintiff seeks "monetary relief" for Defendants' alleged Constitutional and statutory violations and an order transferring Plaintiff to DeBerry Special Needs Facility. (Doc. No. 2 at 3).

### IV. ANALYSIS

The complaint alleges claims against Centurion, identified in the complaint as "[t]he Medical Company hired by the Tennessee Department of Correction[]" (*id*. at 3); Dr. Mark Fowler, Dr. f/n/u Tucker, and Health Care Administrator Kevin Rea, all Centurion

employees; TCIX Assistant Warden of Treatment f/n/u Cotham; TCIX Warden Jason Clendenion; TCIX Classification Coordinator Todd Staples; and TCIX.

A. **Section 1983 Claims**

   1. **TCIX**

   First, Defendant TCIX is a building, not a "person" who can be sued under 42 U.S.C. § 1983. *Cf. Fuller v. Cocran*, No. 1:05-CV-76, 2005 WL 1802415, at *3 (E.D. Tenn. July 27, 2005) (dismissing Section 1983 claims against the Bradley County Justice Center on the same basis); *Seals v. Grainger County Jail*, No. 3:04CV606, 2005 WL 1076326, at *1 (E.D. Tenn. May 6, 2005) ("The Grainger County Jail, however, is not a suable entity within the meaning of § 1983."). Thus, the complaint fails to state a Section 1983 claim upon which relief can be granted against TCIX, and all claims against TCIX will be dismissed.

   2. **Centurion**

   The complaint alleges that Centurion is the entity responsible for providing medical care to inmates at TCIX. Because Centurion performs a traditional state function in providing medical care to state inmates, Centurion and its employees act under the color of state law and are capable of being sued under Section 1983. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

   For Centurion to be liable under Section 1983, the plaintiff must allege that there is a direct causal link between a policy or custom of Centurion and the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In other words, Centurion may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 Fed. Appx. 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private

6

corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

Section 1983 does not permit the imposition of liability based upon *respondeat superior*. *See Street*, 102 F.3d at 818. Liability attaches only if Centurion's policies are shown to be the "moving force" behind the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 353-64 (6th Cir. 1993). Here, Plaintiff does not identify any official Centurion policy, practice, or custom, much less contend that any official Centurion policy, practice, or custom caused the alleged deprivation of his rights.

Because Plaintiff fails to contend that the alleged violations of his rights were caused by an official Centurion policy, practice, or custom, Plaintiff's claims against Centurion fail to state claims under Section 1983 against which relief can be granted. These claims will be dismissed.

### 3. Remaining Defendants

Before addressing the substance of Plaintiff's Section 1983 claims against the remaining Defendants, the Court must address a procedural issue. Plaintiff did not submit his complaint on a form complaint, and he did not indicate whether the non-entity Defendants are sued in their individual or official capacities, or both. (Doc. No. 1 at 3). "However, a plaintiff's failure to explicitly state 'individual capacity' in the complaint is not necessarily fatal to" individual capacity claims. *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003). The Court "employ[s] a 'course of proceedings' test to ascertain whether a Section 1983 defendant was on notice that the plaintiff intended to hold him or her personally liable, notwithstanding the plaintiff's failure to provide explicit notice." *Id*. (citing *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002)). In doing so,

7

the Court analyzes "factors [such] as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint." *Goodwin v. Summit Cnty.*, 703 F. App'x 379, 382 (6th Cir. 2017) (quoting *Moore v. City of Harriman*, 272 F.3d 769, 772 n.1 (6th Cir. 2001)).

Here, the complaint provides sufficient notice to Defendants of their potential individual liability. Plaintiff's claims are based on the lack of action by specific individuals. Plaintiff requests compensatory damages. (Doc. No. 2 at 7). And "[t]o the extent doubt persists that this combination of factors warrants construing the complaint as one against the defendants individually," the Sixth Circuit has counseled that "this doubt should be resolved in [Plaintiff's] favor as a pro se plaintiff." *Lindsay v. Bogle*, 92 F. App'x 165, 169 (6th Cir. 2004) (citing *Boswell v. Mayer*, 169 F.3d 384 387 (6th Cir. 1999)). Accordingly, the Court will consider Plaintiff's non-entity Section 1983 claims as being brought against Defendants in both their individual and official capacities.

1. **Eighth Amendment Claims**

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim against prison officials based on their failure to protect the plaintiff from harm, a plaintiff must present evidence showing that the defendant's conduct amounted to "deliberate indifference" to a known risk of harm. *Id*. at 837; *see also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). Deliberate indifference includes both an objective and subjective element. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). The objective element requires the harm to be "sufficiently serious." *Curry*, 249 F.3d at 506 (quoting *Farmer*, 511 U.S. at 834). Therefore, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*.

Here, the Court finds for purposes of the required PLRA screening that the complaint sufficiently alleges the objective element. Plaintiff contends that his neuropathy poses serious risks to his health when he walks up and down hills, stairs, and steps due to the pain, numbness, and loss of function he experiences. *See Johnson v. Gibson*, No. 4:19-CV-P174-JHM, 2021 WL 886230, at *4 (W.D. Ky. Mar. 9, 2021) (finding that prisoner-plaintiff's diagnoses of neuropathy and/or nerve damage in his left foot constitutes an objectively serious medical condition); *Hamby v. Parker*, No. 3:17-cv-01480, 2018 WL 1794729, at *4 (M.D. Tenn. Apr. 16, 2018) (assuming for purposes of the required PLRA screening that prisoner-plaintiff's neuropathy constituted a serious medical need).

The subjective element focuses on whether prison officials know that inmates face a substantial risk of harm and "disregard[ ] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id*. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. It is not enough that the official "should" have perceived a significant risk but did not. *Id*.

The Court finds for purposes of the required PLRA screening that the complaint sufficiently alleges the subjective element of Plaintiff's Section 1983 claims. Plaintiff alleges that Clendenion, Cotham, Staples, Dr. Fowler, Dr. Tucker, and Rea were aware of the risk of serious harm to Plaintiff by being housed at TCIX yet took no action, causing Plaintiff to experience unnecessary pain, worsening of his neuropathic condition, and limitation on activities in which he could engage while incarcerated without physical hardship.

The Court finds that these allegations state colorable Eighth Amendment claims under Section 1983 against Defendants Clendenion, Cotham, Staples, Dr. Fowler, Dr. Tucker, and Rea in their individual capacities. *See Shabazz v. Schofield*, No. 3:13-cv-00091, 2013 WL 704408, at *13 (M.D. Tenn. Feb. 26, 2013) (finding that prisoner-plaintiff stated a colorable Section 1983 claim based on defendants' failure to implement policies that would prevent inmates with medical restrictions on walking up and down stairs and hills from being placed at TCIX which subjected plaintiff to "daily pain and physical hardships"). These claims will proceed to further development.

Moving to Plaintiff's official capacity claims, his official capacity claims against Dr. Mark Fowler, Dr. f/n/u Tucker, and Health Care Administrator Kevin Rea, all Centurion employees, are essentially claims against Centurion. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). As discussed *supra*, Plaintiff's Section 1983 claims fail to state a claim upon which relief can be granted against Centurion.

Plaintiff's official capacity claims against TCIX Assistant Warden of Treatment f/n/u Cotham, TCIX Warden Jason Clendenion, and TCIX Classification Coordinator Todd Staples are claims against the Tennessee Department of Correction (TDOC), the entity responsible for operating the TCIX. *See* https://www.tn.gov/correction/sp/state-prison-list/turney-center-industrial-complex.html (last visited Sept. 23, 2022); *Alkire*, 330 F.3d 802, 810. The Eleventh Amendment to the United States Constitution bars Section 1983 claims against a State or any arm of a State government. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). TDOC is considered part of the State of Tennessee for purposes of federal civil rights claims and therefore is not a suable entity under Section 1983, either for damages or injunctive relief. *See Hix v. Tennesssee Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006) ("The TDOC is not a 'person'

10

Case 1:22-cv-00024   Document 9   Filed 10/14/22   Page 10 of 17 PageID #: 61

within the meaning of § 1983, and is therefore not a proper defendant.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct2304, 105 L. Ed. 2d 45 (1989)). Thus, Plaintiff's Section 1983 claims against TDOC must be dismissed because TDOC is immune from suit.

In summary, Plaintiff's Eighth Amendment claims under Section 1983 against Defendants Clendenion, Cotham, Staples, Dr. Fowler, Dr. Tucker, and Rea in their individual capacities will proceed. Plaintiff's Eighth Amendment claims under Section 1983 against all other Defendants will be dismissed.

### 2. Fourteenth Amendment Claims

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "in essence 'a direction that all persons similarly situated should be treated alike.'" *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "[T]o establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)). Thus, the plaintiff may state an equal protection claim by alleging "that (1) he was treated disparately from similarly situated prisoners, and (2) the disparate treatment is the result of intentional and purposeful discrimination." *Davis v. Heyns*, No. 17-1268, 2017 WL 8231366, at *4 (6th Cir. 2017) (citing *Robinson*, 615 F. App'x at 314-15).

The complaint alleges that the "[h]ousing . . . at TCIX deprives the Plaintiff [to] access to recreation and religious services as similarly situated inmates in the TDOC who have access to those facilities without experiencing severe medical pains due to them walking up and down steep

hills and stairs." (Doc. No. 1 at 12). However, the complaint does not identify which Defendant(s) is/are responsible for Plaintiff's housing assignments at TCIX, nor does the complaint allege that any Defendant intentionally treated Plaintiff differently from similarly situated prisoners with respect to housing. *See Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006) (with respect to an equal protection claim under Section 1983, a challenged government action must be motivated by animus or ill will); *Jones v. Fly*, No. 3:20-cv-00783, 2020 WL 5653452, at *3 (M.D. Tenn. Sept. 22, 2020) (finding that prisoner-plaintiff who failed to allege that any defendant "intentionally discriminated against him because of his membership in [a] protected class" failed to state an equal protection claim under Section 1983). Rather, the complaint alleges that the individual Defendants are engaged in a "blame game" where they point the finger at one another for Plaintiff's failed transfer, none willing to take responsibility. (Doc. No. 2 at 4). Thus, the Court therefore finds that the Plaintiff's allegations fail to state colorable claims under Section 1983 against any Defendant in his or her individual capacity for violation of the Plaintiff's equal protection rights. Those claims will be dismissed.

As discussed above, Plaintiff's Section 1983 claims against Defendants in their official capacities fails as a matter of law. Those claims, too, will be dismissed.

### B. ADA Claims

The ADA prohibits public entities from discriminating against a qualified individual with a disability on account of that disability in the operation of services, programs, or activities. 42 U.S.C. § 12131(1); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). The ADA is applicable to state and local government entities, including prisons and county jail facilities. *See Yeskey*, 524 U.S. at 210 (holding that the term "public entity" includes prison facilities); *Tucker v. Tenn.*, 539 F.3d 526, 529 (6th Cir. 2008) (applying the ADA to a pretrial detainee's claims against

12

a county jail facility). Title II's implementing regulations further provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." 28 C.F.R. § 35.130(b)(7).

Here, Plaintiff does not allege intentional discrimination against him. Rather, he alleges that Defendants failed to provide with him reasonable accommodation of his disability, including different housing and a transfer to another facility. *See Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014) ("In the typical Title II case, the plaintiff alleges she was denied reasonable accommodations in violation of the Act.").

Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate Section 12132. *United States v. Georgia*, 546 U.S. 151, 160 (2006) (holding that Title II of the ADA validly abrogated state sovereign immunity insofar as it created a private cause of action for damages against the states for conduct that violates the Fourteenth Amendment). Thus, the proper defendant to a suit under Title II of the ADA is the public entity or an official acting in his or her official capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). "Title II of the ADA does not, however, provide for suit against a public official in his individual capacity." *Id.*; *see also Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("[T]he ADA does not provide for personal liability for defendants sued in their individual capacities . . . . We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities."). Likewise, an ADA claim against TCIX, a building, is not viable. Therefore, the Plaintiff's ADA claims against the named Defendants in their individual capacities and TCIX must be dismissed.

With respect to Plaintiff's ADA claim against Centurion, "a private corporation is not a public entity merely because it contracts with a public entity to provide some service." *Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) (determining that Corizon Health and its employees were not public entities under the ADA) (quoting *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)); *see also Thompson v. Michigan Dep't of Corr.*, No. 17-10490, 2018 WL 5094078, at *2 (E.D. Mich. Aug. 10, 2018) (concluding that a private health provider that contracted with a state prison was not a "public entity" under the ADA); *Phillips v. Tiona*, 508 F. App'x 737, 754 (10th Cir. 2013) (same). Thus, Centurion, a private corporation that contracts with a public entity to provide health care to inmates, is not amenable to suit under the ADA. The Court therefore will dismiss Plaintiff's ADA claim against Defendant Centurion.

Plaintiff has, however, named as Defendants the TCIX Warden and Assistant Warden in their official capacities. As noted above, these Defendants are employees of TDOC, and the Court construes Plaintiff's claims against these TDOC employees in their official capacities as claims against TDOC. *See Christy v. Lindamood*, No. 1:18-cv-00008, 2018 WL 1907447, at *10 (M.D. Tenn. Apr. 23, 2018) (citing 28 C.F.R. § 35.133(a) and finding that prisoner-plaintiff's ADA claim against state prison "public employees or supervisors in their official capacities" are claims against TDOC, and those claims will proceed for further development). TDOC is an appropriate Defendant for Plaintiff's ADA claims.

Title II requires the plaintiff to show that: (1) he has a disability; (2) he is a "qualified individual"; and (3) he was "being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of" his disability. *Anderson*, 798 F.3d at 357 (citing 42 U.S.C. § 12132). The ADA defines a disability as a physical or mental impairment that substantially limits one or more of the major life activities of the individual. According to the

ADA regulations, an individual is "substantially limited" in performing a major life activity if he is either: (1) unable to perform a major life activity that the average person in the general population can perform (*e.g.*, walking), or (2) significantly restricted as to the condition, manner, or duration under which she can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity (e.g., being able to walk only for brief periods of time). 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Second, to qualify as a disability under the ADA, the plaintiff must show more than a physical impairment; he must allege and demonstrate that the identified impairment renders him unable to perform a major life activity or significantly restricts the condition, manner, or duration under which he can perform a major life activity. 42 U.S.C. § 12012(2); *Salim*, 106 F. App'x at 459.

First, Plaintiff alleges that his neuropathy significantly restricts or renders him completely unable to perform major life activities. *See Creech v. Ohio Dep't of Rehabilitation and Corrs.*, No. 2:19-cv-104, 2021 WL 22523, at *6 (S.D. Ohio Jan. 4, 2021) ("It can hardly be doubted that walking and eating qualify as major life functions."). Thus, Plaintiff sufficiently alleges that he has a disability as defined by the ADA.

Second, a reasonable inference can be made from the pleadings that Plaintiff is a "qualified individual" under Title II. A "qualified individual" means "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The phrase "'services, programs, or activities' encompasses virtually everything a public entity does." *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015); *see United States v. Georgia*, 546 U.S. 151, 157 (2006) (stating that prison officials' refusal to

accommodate an inmate's "disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs [plausibly] constituted 'exclusion from participation in or . . . denial of the benefits of the prison's 'services, programs, or activities.' ") (Scalia, J.) (alterations omitted).

Third, Plaintiff alleges that Defendant's failure to accommodate Plaintiff's disability denies him the ability to participate in daily life at TCIX and in certain prison programs without significant physical pain and hardship. *See Burley v. Michigan Dep't of Corrs*., No. 16-cv-1012, 2016 WL 11259277, at *10 (E.D. Mich. Nov. 30, 2016).

While it is true that the ADA "does not create a remedy for medical malpractice[,]" *Larson v. Eppinger*, No. 2:20-cv-4997, 2021 WL 2659998, at *8 (S.D. Ohio June 28, 2021) (quotation omitted), this case does not involve allegations of medical malpractice or disagreements about medical treatment. The Court finds that Plaintiff sufficiently states a claim for failure to provide a "reasonable modification" under Title II of the ADA against TDOC. This claim will proceed.

## V. CONCLUSION

Having screened the complaint pursuant to the PRLA, the Court finds that Plaintiff's Eighth Amendment claims under Section 1983 against Defendants Clendenion, Cotham, Staples, Dr. Fowler, Dr. Tucker, and Rea in their individual capacities will proceed. Plaintiff's Eighth and Fourteenth Amendment claims against all other named Defendants will be dismissed for failure to state claims upon which relief can be granted under Section 1983.

In addition, Plaintiff's claim for failure to provide a "reasonable modification" under Title II of the ADA will proceed against Defendants TCIX Warden and Assistant Warden in their official capacities, which is a claim against TDOC. Plaintiff's ADA claims against all other named Defendants fail to state claims upon which relief can be granted under the ADA.
16

An appropriate Order will be entered.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE